May it please the court I'm James Tree I am representing Jessica Bixler the claimant that was denied SSI benefits and we're here appealing that decision on a de novo basis. Ms. Bixler in her case there are seven specific functional limitations given by medical sources. De novo on the district court deferential for the Social Security Administration right? Yes de novo from the district court yes and let me ask you a question that's bothering me here okay I look at the hypothetical that was presented and I look at the judge's remarks and it looks like the judge made a mistake in his remarks and and it may be that I don't know we don't confer in advance and I for one don't make up my mind so I have to but let's say it's reversible error what happens then it looks like she really doesn't have much medical support for disability she's young so she has to be disabled to do any kind of work in the market as a whole her medicals are really weak and she's got some specific facts like turning down a 40 hour a week job because she didn't want to work more than 20 hours they're just terrible so what happens we just send it back and this time the judge does it right and it sticks no I don't believe so I I believe that this judge if we send it back to the same judge she would find that the claimant disabled and when I got really to show that she's disabled well regarding the 40 hour job that was at Starbucks yep and what I think the judge they LJ if you're reading from the LJ decision she definitely got the facts wrong yep because they LJ said that she was offered a 40-hour week job she what had been through lengthy counseling that's confirmed in the record that all the counselors said we have lengthy records we've reviewed those lengthy records she her counselors had told her to apply for SSI but it has to be a disability it can't just be a personality and the counselors who thought she was disabled as I recall none of them had MD degrees correct now the medically determinable impairment the diagnosis has to come from an acceptable medical source which we have that in this case we have that opinion from acceptable medical source and we have the ALJ accepting that and finding that she does indeed have severe okay so we're middle impairments remind me which is your best MD source so doctor would be a PhD clinical psychologist and the best would be dr. Beatty who's a state agency physician his opinion that she has moderate limitations in seven different areas on the mental residual functional capacity for the problem with the PhD is that's a psychologist it's not a psychiatrist so we can't diagnose bipolar or clinical depression and he's limited in what he can diagnose the actually the regulations allow a psychologist to diagnose those conditions of personality disorders bipolar disorders and they are considered under the regulations and acceptable medical source it's the same as the psychiatrist is there's no really even though they can't prescribe yes oh no yes even though they can't diagnose these conditions and that's well accepted in in in social security regulations in the case law so what you're asking for is that the matter be remanded for the ALJ to take another look at it well our first request is that the a that the matter be remanded for an immediate award of benefits based upon the opinion of dr. Beatty and the testimony of the vocational expert there'd be no work that they could do couple that with a record that does I show that miss Vixler is disabled because we have five treating sources which are not acceptable medical sources because they're therapists AR NPS and licensed mental health workers but under the regulations there's opinions regarding severity are to be considered and be given substantial weight unlike their problem with remanding it for an award of benefits is that the record in this case and and judge Kleinfeld's questioning went to that is pretty mixed as to whether there was a disability or not frankly in reviewing the record I tend to agree with you we haven't conferred on this I don't know for unanimous in that perspective that the ALJ did make some mistakes in rendering the ruling because on the one hand the ALJ seemed to accept the moderate limitations of dr. me but yet on the other hand really rejected defense counsel's hypothetical so given the deferential standard review why isn't it appropriate if we are of that view to remand for the ALJ to explain the basis of the decision yeah if the court is not if the court has serious doubts that miss Vixler is disabled or not then the appropriate remedy would be to remand for additional proceedings and we believe that there there is a strong case what do they do then it looks like we're just correcting the ALJ's papers and because she's had plenty of proceedings I mean I was kind of impressed that Philip D Rodenberger MD wrote bipolar affective disorder depressed phase this is a previous diagnosis given her with which I am not in agreement yeah the previous month to that dr. Kim who was also a psychiatrist his report is completely explained in the record but it's not in the record the prior month she had gone into Central Washington comprehensive mental health in Yakima Washington seen dr. Kim or yeah dr. Kim and he diagnosed bipolar disorder the following month she saw doctor that in the record right the reports not in the record but there's numerous references to his file that the therapist had seen it reviewed it and explained what he diagnosed that he did diagnosed bipolar dr. Rodenberger talks about it and says he saw it he didn't agree with the diagnosis of bipolar disorder because he felt she had a severe borderline personality disorder which is one of the most severe disorders a person can have a borderline personality disorder I don't think qualifies as a medical as a disability based on a medical condition does it it does under listing 12.08 of the Social Security listings they recognize personality disorders including borderline personality disorders in fact the state agency consultants had found that she had a personality disorder and so did the administrative law judge and that can be a listing level impairment or also it could be an impairment under steps at step 5 where an individual is found disabled because of their residual functional capacity based upon the personality disorder and Social Security does recognize personality disorders as disabling impairments I thought borderline personality disorder didn't mean much more than an unusually narcissistic individual that didn't want to conform to social obligations no no not at all the DSM for describes a borderline personality disorder as a person that and in fact they say that 10% of all people diagnosed with borderline disability disorder borderline personality disorders will successfully complete suicide it's a very serious disorder the thing that we don't have him here right we have when I look through the excerpts I won't I can't find a chart note from dr. Kim it was prior to the alleged onset date by a little bit was in 2007 and the SSI application date was 2008 Nikki Rogers had actually recommended in 2000 late 2007 that miss Bixler apply for SSI because she didn't she wrote in her chart no she didn't feel like she could work that she was disabled and at best she could work in a sheltered workshop or within a job coach setting so that the DSM Ford defines borderline personality disorder as somebody that has a very significant problem getting along with other people and a typical feature of borderline personality disorder is the person will highly value an individual when they first meet them but as soon as they in their judgment see that they're not meeting their expectations or they're a little low they will greatly devalue that individual like the ALJ wrote that she said her therapist was dumb that's a textbook example of borderline personality disorder her in a bit can I if we I don't know if we're in agreement but if we were to say that the ALJ made a mistake by crediting dr. me's section one but then not actually including it in the hypothetical and so we said there's this fundamental mistake in the ALJ's decision we can't figure out what the ALJ meant and we sent it back with ALJ just write a new decision or would there be further proceedings what would you do at that point so I would request that the court remit it back for a administrative law judge I'd request to go back to the same administrative law judge judge awesomes she's still in Spokane Washington and that we have a new hearing that she be because see her fundamental mistake was that she thought that that hypothetical came from a non acceptable medical source one of the therapists right and so if she if she accepts dr. Beatty's what she did in her opinion she except excuse me dr. me's dr. me's conclusion which was concurred in by dr. Beatty she accepted it the vocational expert clearly said there'd be no job she could do in fact that the ALJ acknowledged that in her decision that that the hypothetical she thought was from a non acceptable medical source the V said there'd be no jobs a person could do to that hypothetical her mistake was that it was actually came from dr. Beatty or dr. me not from the unacceptable medical source so there's a very distinct possibility that judge awesomes could say yeah I stand by my opinion that that I accept dr. me I accept the vocational experts opinion which she did in this record she accepted it she said it's in conformity with the dictionary of occupational titles she didn't reject the vocational expert testimony she could very well say that based upon that evidence I find miss Fixler disabled further there's there's many reports from non acceptable medical source this miss Fixler is disabled it can't work and as to symptom severity Social Security ruling oh 603 P says that licensed medical mental health providers and ARNPs can give opinions regarding symptom severity the problem that you have with a lot of your medical sources who are not MDs is they took her medical history from her own self-report even though she was acknowledged to be a poor as she reported that she had bipolar disorder we don't have a medical doctor here saying she does we have dr. Rodenberger that said that he saw dr. Kim's report and dr. Kim diagnosed her the month previous with bipolar disorder that's in dr. Rodenberger's report and burger says no bipolar because she's never had a manic episode but here's here's the significance of her saying she she speculates she has bipolar disorder with dr. Rodenberger's opinion it wasn't that she was just making it up herself it was the month before she'd seen dr. Kim a psychiatrist and dr. Kim had said you've got a in my opinion you have a bipolar disorder you don't have Kim's reports so we can't read it we have to take dr. Rodenberger's word on it and third-hand reports about it we have to take another psychiatrist word on it that he said he saw in the report again dr. Rodenberger's report and it's also in numerous other reports from her health therapist that that dr. Kim's report that they had read it and that he had diagnosed bipolar disorder it's in there many times your honor yes I would thank you good morning may it please the court Jeff Staples for the Commissioner we would ask that you affirm the district courts judgment because the ALJ's supported by substantial evidence and it's free of legal error I think the nub of what we're getting at here is what is the significance of dr. Mee's opinion and it sounds like there's some discussion of you know did the ALJ error did the ALJ make a mistake this court can only I think what the ALJ said is she said somebody wasn't a qualified medical source when that person was and she'd said so in another line in her report that's correct your honor at the step five decision part of the decision the ALJ said I've rejected the hypothetical from the claimants representative because it's not from an acceptable medical source and that as opposing counsel pointed out is not the case that was a reading of the moderate checkbox limitations described in dr. Mee's in section 1 of dr. Mee's report and the ALJ credited section 1 the ALJ credited dr. Mee's opinion and went through and discussed that section 1 so what do we do to reconcile that conflict on the one hand the ALJ thought that dr. Mee's opinion obviously had some weight and and I I don't think he's required to go through the whole checklist of all the moderate limitations identified by me but overall he obviously thought that that opinion carried some weight but yet when defense counsel inserted the limitations into hypothetical the ALJ rejected it out of hand in part because he thought that it came from a non-medical source and so that's the basis of the ALJ's opinion I accepted the vocational experts testimony that the claimant can work these jobs and I'm rejecting that hypothetical because it's based on something that's not reliable when the ALJ thought it was reliable at a minimum doesn't that then dictate that we remand for the ALJ to explain the basis of that opinion and to reconcile that conflict well while the ALJ did err in saying why she was rejecting that particular part of the hypothetical the idea that there's a conflict here I think is is where we're you know where we're going to differ the the fact that the vocational expert responded a certain way to a hypothetical with the moderate checkbox limitations is not significant because dr. Mee's opinion the actual residual functional capacity assessment was contained in section 3 of dr. Mee's report the ALJ could have found that the ALJ could have said I I'm going to credit section 3 or only rely on section 3 but instead the ALJ incorporated by number the exact numbers the listings of limitations in section 1 so once the ALJ has done that and has credited section 1 how can we say that they the ALJ now is no longer crediting it if there's just this internal conflict I don't understand how you can get out of that by saying section 3 is slightly different well your honor section there is not a conflict between section 1 and section 3 and this court has dealt with that well if there's not if they're the same then didn't ALJ need to credit SEC continue to credit section 1 in the hypothetical section 1 is a it's a worksheet for dr. me to use as he comes up with his opinion so the question is what is dr. Mee's opinion and this court in Nathan B Colvin has decided that the opinion part is in section 3 that's the part where dr. me says what miss Bixler can do in spite of her limitations so the fact that a claimants representative can read the moderate limitations to a vocational expert is not as significant because moderate is not a vocationally significant term and the palms indicate that adjudicators are not to use non-specific qualifying terms like moderate or moderately severe because such terms do not describe function and do not usefully convey the extent of capacity limitations so regulations call for ALJs to rely on section 3 right when they do their hypotheticals that that's where they they go off of so let's say we agree with you that section 3 is really the proper focus of the ALJs opinion but but I'm troubled even under that scenario because what the ALJ seem to have done in this case is he broke section 3s assessment of residual functional capacity into two separate hypotheticals and under the first hypothetical the vocational expert identified three jobs that the claimant could do but in the second hypothetical when the ALJ inserted the time-sensitive nature of the work let me go back to Dr. Mee's report that she would do better in work that's not primarily sensitive and when the ALJ said well let me add a variable if I insert the fact that she would likely do better in work that's not primarily sensitive time-sensitive how does that impact her ability to perform the three jobs identified and the the answer that the vocational expert gave was that it's going to have a significant impact on it and the vocational expert went through each of the three jobs identified a sorter cleaner mail clerk all of those jobs have certain time limitations that need to be done let's see the cleaner job has certain tasks so if they were unable to complete the tasks that were assigned her each given shift most likely would lead to termination and I think that's fairly significant because when you insert that additional limitation the vocational experts seem to shift the opinion as to whether she has the ability to perform those three jobs and I didn't see the ALJ address that in the opinion so what do we do with that so an ALJ is not required to include in the capacity assessment is the most a person can do in spite of their limitations so when you have a notation in dr. me's report that the claimant would likely do better in work that is not primarily time-sensitive that does not indicate that she cannot work in a situation that's I think you're answering a different question because in this case what I'm saying is the ALJ did provide that limitation and got an opinion and that opinion is that somebody with that sort of limitation would not be able to perform under time pressure type jobs and so in the three specific jobs identified she would most likely perform so poorly that would lead to limitation given that opinion I would expect at a minimum the ALJ to address it in some fashion that portion of the the vocational experts being seem to just have dropped out completely when the AJ explained the basis for concluding that there was no disability in this case so the vocational experts testimony on this subject illustrates why it's not appropriate to ask a vocational expert to make medical decisions about what this means a person can or can't do the vocational expert when asked this and both she and the ALJ agreed that this is a very vague statement she said so if they were unable to complete tasks that were assigned her each given shift most likely it would lead to termination that's not what dr. me said dr. me said she would likely do better in work that is not primarily time-sensitive the vocational expert appears to have complete tasks in a timely manner which isn't dr. me's opinion so when the vocational to allow the vocational expert to translate a medical opinion in her own with her own vocational expertise is not appropriate and is why ALJ's are not required to include these kind of non-concrete recommendations about work in which a claimant might do better because that doesn't say include well the ALJ include asked the vocational expert about it but the ALJ did not include it in the residual functional capacity assessment so the mere fact that a vocational expert gave certain testimony about what she understood a limitation to be which does not match up with dr. me's opinion that doesn't say anything about what ms. Bixler can actually do in spite of her and because the ALJ's residual functional capacity assessment was consistent with the actual limitations in dr. me's report there's actually no conflict to resolve here although the vocational expert did make some testimony about that limitation that's extraneous information that the medical limitation again I keep I keep losing it frankly it looks as though she has no that's although plenty of people are fully and and well employed with bipolar disorder certainly your honor get properly medicated and I can't figure out what else there is that's a medical limitation not subject to cognitive behavioral therapy or medication so that she can work all I can get out of it is continual reference to dr. me's report which I could not read because it's not in the record what is the medical problem well your honor dr. toes indicated that she had dysthemic disorder who's that that was a nurse practitioner that was an eddie that's considered an acceptable matter who has a doctorate in education correct your honor and that she thought that there was a personality disorder the ALJ found that ms. Bixler I'm sorry suffered from dysthemic disorder versus bipolar disorder systemic just means correct I think our serious mood disorders like anxiety disorder or clinical depression that are disabling at least if not adequately medicated but dysthemia is a very broad term to indicate just any negative aspects of mood like not liking and I can't tell which this is so step two at which the delineates any medically determinable severe impairments is a screening device to weed out groundless claims and basically the ALJ seems to have indicated okay she has some medically determinable mental impairments there's some dispute in the record about what those are but because she has something I'm gonna move on with the analysis and I'm going to get to the real issue which is what are her functional limitations whatever her impairments are let's look at what functional limitations those impairments cause assuming there's some functional assuming there's some the heart of your argument is that even if the doctor says she'd do better at something that didn't have any time requirements that doesn't mean she can't do something that does have time requirements correct your honor it's medical sources routinely say what a did the time sensitive one was not one was not a limitation that he said she can't work in in she can't do work that's time sensitive he merely said she would likely do better in work that's time sensitive and a lot of us would do better in certain I don't read the ALJ as basing is it I don't know if it's a he or she that I don't read the ALJ as basing the ALJ's conclusion on what you're saying now that dr. me didn't really mean time sensitive wasn't a ALJ is saying getting confused and saying dr. me is not an acceptable acceptable medical source there isn't medical evidence because apparently because dr. me is not a medical source how do you find what you're saying in this opinion in the ALJ's decision well the ALJ in discussing the vocational testimony made a mistake as we can all agree that's not true that this error has to be harmful there has to be some some place in the decision that ms. Bixler is prejudiced and because the ALJ credited dr. me his opinion in formulating the residual functional capacity assessment there's no harm from him later saying oh yeah I actually don't like this opinion because he already did credit it and the residual functional capacity assessment is consistent with dr. me his opinion with the actual concrete limitations that dr. me described in section 3 and would likely do better in work that is not primarily time sensitive is not a concrete function limitation so it seems like you're arguing that this this mistake is harmless but how do we know that from looking at this it seems that there were different hypotheticals that some of them said the claimant couldn't work and the ALJ got confused about how to discredit that hypothetical so how do we know that this is harmless you know that it's harmless because the ALJ's residual functional capacity assessment is consistent with dr. me his opinion so but we still have to find out if a vocational don't we still need a vocational expert which you have because the ALJ also asked the vocational expert whether there were any jobs that ms. Bixler could do with her actual residual functional capacity later testimony adding additional maybe limitations or moderate checkboxes is not the issue the vocational I see my time is up can I just finish this question what can the person do with their actual functional limitations and so if a vocational expert later goes on to testify other things that aren't supported by the ALJ is reading of the medical evidence that is maybe interesting but not pertinent to it doesn't demonstrate a harmful error and so the fact that an ALJ might err in saying why a certain vocational hypothetical is not accepted is not a harmful error because the ALJ got it right where it mattered and that was finding the residual functional capacity assessment and asking presenting that vocational hypothetical to the vocational expert and getting a significant number of jobs that ms. Bixler could do in spite of her actual limitations as supported by dr. me's opinion thank you thank you your honor I there's I think there's a there's a little bit confusion in the at the ALJ level in the courts about section 1 versus section 3 and if there's a real distinction of what the ALJ can consider now the palms it says that and this is where the confusion comes in it is the narrative which is section 3 written by psychologists that adjudicators are to use as the assessment of the RSC now is that palms talking about adjudicators meaning the adjudicators at the initial and reconsideration level or are they also including ALJs in that and do we need to follow palms anyway what palms aren't regulations that were promulgated pursuant to rulemaking authority or what it's just a guidebook right it's a it's guidebook and it's something that Social Security says is agency policy and that has persuasive persuasive value to courts is what where case said and so what the where case what case is that it's it it's a case that had said that the palms have persuasive authority and it's a Ninth Circuit case yes I published one I believe so I've got it in my brief it's it's in the table of authorities there young but I think the thing that's important is that this palms is not is not speaking to ALJs it's speaking to the adjudicators and this is referenced in the regulations certainly a palms cannot contradict a regulation and be valid regulation is legal authority and is binding and is more than just persuasive authority the regulations state in 20s and these are all in in section 927 of 20 CFR section 416 which the regulation is doing with SSI and in section 927 there's a series of regulations that talk about this very issue that we're talking about with section 1 versus section 3 evidence first it explains that at the initial and reconsideration determinations we have what we call a PC which is like a psychological consultant that was dr. me sorry can I interrupt for a second so the brief spent a lot of time on this issue about whether the ALJ could rely on section 3 or section 1 and whether that's okay and palms and all of that I don't read the ALJ as relying on section 3 instead of section 1 it seemed to me that the ALJ relied on section 1 but then got confused so I don't understand why there's so much discussion of this issue well the reason is it's an important issue in some of the courts I think are I think are being taken down the wrong path by the arguments of defense I mean that may be but that's not what this case is about in this case truly is that this this ALJ accepted the section 1 limitations and specifically said these are opinions of dr. me the federal court said that the reason the federal court denied it is they made a holding that the section 1 findings were not opinions of dr. me or they were not dr. me's opinions whereas the ALJ in her decision she specifically said section 1 are the opinions of dr. me she said that verbatim and so yes in this case so it seems like we don't have to resolve this issue of palms and whether you can rely on section 3 that's not what this case is about right yeah that's right all right you over time thank you very much both sides for your arguments the matter is submitted for
judges: Kleinfeld, Nguyen, Friedland